**WEEKS DREDGING &
CONTRACTING, INC.,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 694–84C.**

United States Claims Court.

Sept. 26, 1986.

David C. Romm, Vienna, Va., attorney of record for plaintiff. Watt, Tieder, Killian & Hoffar, of counsel.

Joseph T. Casey, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## POST–TRIAL INTERLOCUTORY OPINION

REGINALD W. GIBSON, Judge:

### I. *Introduction*

This opinion endeavors to resolve a number of interlocutory issues arising out of the trial on the merits in subject case which was before the court from August 7 through September 11, 1986. In that connection, we address herein several motions by the parties: (1) plaintiff's motion *in limine* filed August 7, 1986; (2) plaintiff's motion to disqualify certain witnesses of the defendant made on August 25 and 26, 1986, as well as to strike certain testimony and exhibits;[1] and (3) defendant's motion to strike certain testimony of plaintiff's expert witness made orally on September 10, 1986,[2] and modified by written submission filed September 15, 1986. Supportive memoranda of law have been filed by the parties addressing each of the issues presented by the respective motions. In addition, this opinion also contains a statement of certification to the U.S. Court of Appeals for the Federal Circuit, pursuant to 28 U.S.C. § 1292(d)(2) (1982), relative to the controlling questions of law addressed in the parties' FRE Rule 615 motions. Lastly, the parties are hereby ordered to appear before this court for a status conference relative to fixing a post-trial briefing schedule on Friday, October 10, 1986, at 10 a.m.

1. Transcript of Proceedings, August 25, 1986, at 36, 41.

2. Transcript of Proceedings, September 10, 1986, at 58.

3. *See* General Provision (Construction Contract) # 4. Differing Site Conditions (1968 Feb.). "(a) *The Contractor shall promptly, and before such conditions are disturbed, notify the Contracting*

### II. *Statement of the Case*

In this government contract case (*i.e.*, awarded as DACW 01–79–C–0125 on April 2, 1979), the plaintiff, Weeks Dredging & Contracting, Inc. (Weeks) seeks an equitable adjustment in the amount of $3,941,648.00 (plus interest) arising out of a differing site conditions claim relative to a dredging contract entered into with the U.S. Army Corps of Engineers (Corps) on the now completed Tennessee-Tombigbee Waterway. Plaintiff claims that during the dredging operations in compliance with the contract, it encountered subsurface soil conditions which were materially different than those estimated by the Corps and contained in the Invitation for Bid, DACW 01–79–B–0039 (IFB). As a result, it is claimed, Weeks required an additional 215 days, beyond the stipulated contract completion date, in order to complete the project. Weeks now claims monetary compensation, *inter alia*, for the unanticipated 215 days of additional dredge time.

In reply, defendant alleges a number of exculpatory circumstances which it claims overcome plaintiff's entitlement to any equitable adjustment. For example, defendant alleges that plaintiff's project overruns were due to—(i) plaintiff's own inadequate pre-bid site investigation, (ii) Weeks' own inaccuracy in interpreting the contract documents, and (iii) also to an inexperienced and poorly qualified work force, rather than to a material differing site condition. In addition, and alternatively, defendant strenuously asserts that, as a matter of law, plaintiff's claim is conclusively barred from any entitlement due to its failure to provide the Corps with timely notice of the differing site conditions claim as required by the contract.[3]

*Officer in writing of:* (1) subsurface or latent physical conditions at the site differing materially from those indicated in this contract.... The Contracting Officer shall promptly investigate the conditions, and if he finds that such conditions do materially so differ and cause an increase ... in the Contractor's cost of, or the time required for, performance ... an equitable adjustment shall be made and the contract modified in writing accordingly.

It is because of this latter defense, *i.e.,* of untimely notice which was *initially* raised in defendant's pretrial submission, that plaintiff moved, *in limine,* to preclude defendant from adducing evidence of lack of timely notice at trial. From the beginning, *i.e.,* in its complaint filed on December 26, 1984, plaintiff averred in paragraph 15 that:

> *Weeks gave the Corps timely notice of said differing site conditions,* certified its claims, and requested an equitable adjustment to the Contract price and time plus a remission of liquidated damages assessed by the Corps.

(emphasis added). In fact, said averment appeared *twice* in the complaint by its incorporation into both Counts I and II. In its answer filed on March 20, 1985, defendant admitted the foregoing allegations contained in paragraph 15 as it appeared in both places (*i.e.,* paragraph 19) in plaintiff's complaint. Therein, defendant succinctly, unconditionally, and unambiguously states in response—"15. Admits." It is plaintiff's position, therefore, that inasmuch as defendant *never* amended its answer to provide otherwise (nor sought to explain such failure), and the issue was never addressed during pretrial discovery, which discovery concluded on November 30, 1985 (approximately 11 months after the complaint was filed), defendant is irreversibly bound at this posture by the unequivocal admission contained in its answer. As a consequence, plaintiff argues, defendant necessarily must be prohibited from raising the issue of timely notice by adducing evidence relative to the absence of such at trial. In support of its motion in bar, plaintiff cites to the decisions found at *Baskett v. United States,* 2 Cl.Ct. 356 (1983); *Smith v. Chapman,* 436 F.Supp. 58 (W.D. Tex.1977); and *Seven-Up Bottling Co. v. Seven-Up Co.,* 420 F.Supp. 1246 (E.D.Mo. 1976).

"(b) *No claim of the Contractor under this clause shall be allowed unless the Contractor has given the notice required in (a) above....*" (emphasis added). A copy of this provision can be found in Plaintiff's Exhibit 1.

Defendant, of course, opposes plaintiff's motion on a number of grounds. First, it avers that inasmuch as plaintiff waited until the first day of trial to file its motion *in limine,* defendant alleges plaintiff's motion is itself untimely. Defendant also claims that the authorities cited to by plaintiff are inapposite in that they overlook the additional point that while admissions may be binding, in the discretion of the court, they may also be overlooked. For this proposition, defendant cites to *McGee v. O & M Boat Co.,* 412 F.2d 75 (5th Cir.1969), and *Freedom National Bank v. Northern Illinois Corp.,* 202 F.2d 601, 605 (7th Cir. 1953). On the foregoing proffered authority, and given the alleged erroneous nature of its admission, defendant argues that it should be relieved of any burden flowing therefrom. Lastly, defendant argues that no prejudice to plaintiff would occur were the motion *in limine* denied.

The second motion of the plaintiff, one framed to disqualify certain defense witnesses and to strike evidence and exhibits, arises out of somewhat serious and reprehensible circumstances which surfaced during the trial. In that connection, on Monday morning, August 25, 1986, following a weekend recess, defendant's expert witness, Mr. Ronald Nettles, resumed the stand to permit counsel for the plaintiff to continue with his cross-examination. Counsel for plaintiff commenced his questioning with two seemingly innocuous questions. In substance, they sought to ascertain whether Mr. Nettles had, since the time and date his oath was administered, discussed his testimony with the defendant's party representative, Dr. William Lang, and also whether Dr. Lang had discussed with Mr. Nettles the testimony of other plaintiff witnesses, particularly Dr. Kondner.[4] Quite surprisingly, Mr. Nettles answered both questions in the affirmative ("Yes, I have." and "Yes, he has.").[5] Upon

4. Transcript of Proceedings, August 25, 1986, at 4.

5. *Id.*

further pointed questioning of Mr. Nettles by counsel for plaintiff, facts were developed whereby, we believe, a consistent pattern by defendant to intentionally thwart the impact of the court's Rule 615 order was established. These facts, presented and discussed in greater detail, *infra*, provide the relevant background and factual basis for our justification in granting plaintiff's motion to strike the *substantive* testimony of Mr. Nettles, and another government expert witness, Dr. Peter Tarkoy, and disqualify them for numerous violations of Rule 615, Federal Rules of Evidence (FRE).

From the surprising testimony of Mr. Nettles, it appears that throughout the trial, defendant's counsel has made use of a conference room, in the hotel at which out-of-town witnesses and counsel were staying, as a sort of in-house briefing center.[6] Mr. Nettles testified, albeit haltingly, that he and other defense witnesses had a standing invitation from defendant's counsel to go to the conference room, where they frequently discussed the progress of the case, including the record testimony of plaintiff's witnesses who had previously testified.[7] In addition, Nettles' testimony also links meal time as another period during which defendant's witnesses and counsel gathered to discuss the record testimony of the plaintiff's witnesses.[8] On various occasions, in the hotel conference room or during meal time, the record reflects that Mr. Nettles participated in and/or overheard discussions of the record *testimony* of plaintiff's witnesses Dr. Kondner (expert),[9] Mr. McPhillips,[10] Captain Harris,[11]

Mr. Rice,[12] and Mr. Turner (expert).[13] All such discussions of the plaintiff's witnesses' record testimony were precipitated by one or the other or a combination of defendant's counsel, or defendant's party representative, Dr. Lang.

Also inextricably involved in these briefing sessions was defendant's expert witness Dr. Peter Tarkoy. Dr. Lang testified that Tarkoy was present in the conference room on numerous occasions when the testimony of plaintiff's witnesses Messrs. McPhillips,[14] Rice,[15] Kondner,[16] and Turner[17] was openly discussed. More important, however, is the incredible fact that, notwithstanding the court's sequestration order entered on August 7, *i.e.*, before the first witness was sworn, defendant's counsel admits that he provided Dr. Tarkoy with a copy of the transcript of plaintiff's expert witness' (Dr. Turner's) testimony (some direct and all cross) before Dr. Tarkoy testified.[18] In addition, Dr. Tarkoy himself elaborated on his own participation in the briefing sessions describing his role as one of preparing cross-examination questions to be put to Mr. Rice and then reviewing with defendant's counsel the precise answers (*i.e.*, record testimony) given by this witness.[19] Possibly to a lesser extent, defendant's witnesses Ronnie Hathorne[20] and Roger Fulmer[21] were also present in the conference room during the foregoing discussions which similarly enabled them to overhear the frequent recounting of plaintiff's witnesses' testimony.

6. *Id.* at 11–13.

7. *Id.*

8. *Id.* at 18–20.

9. *Id.* at 6.

10. *Id.* at 9.

11. *Id.* at 10.

12. *Id.* at 14.

13. *Id.* at 22–23.

14. Transcript of Proceedings, September 2, 1986, at 74.

15. *Id.* at 76–77.

16. *Id.* at 84, 86.

17. *Id.* at 86–87.

18. Transcript of Proceedings, August 26, 1986, at 45–46.

19. Transcript of Proceedings, September 4, 1986, at 88–92.

20. Transcript of Proceedings, September 5, 1986, at 50–53.

21. *Id.* at 198–201.

On these facts, and those elaborated more fully *infra,* plaintiff's oral motion of August 25, 1986, followed by its written submission of August 26, 1986, seeks the disqualification of Mr. Nettles and Dr. Tarkoy as government witnesses, the striking of their testimony, and any exhibits introduced through them, as an appropriate sanction for defendant's counsel's alleged willful and knowing violations of FRE Rule 615 as implemented by the court's order.[22] In support of its motion, plaintiff argues that the court's general FRE Rule 615 sequestration order encompassed a prohibition on *all* witnesses not to discuss or be a party to *any* discussions involving their *own* or *any other* witness' record testimony prior to the time they themselves were *finished* testifying. Further, that if they were to be called as rebuttal witnesses, the sequestration extended up to the time their rebuttal testimony was completed. Supportive of the foregoing, plaintiff contends that the weight of long-standing authority corroborates its interpretation, as well as buttresses plaintiff's request for an order disqualifying the offending witnesses as a sanction for any such violation. *See Miller v. Universal City Studies, Inc.,* 460 F.Supp. 984 (S.D.Fla.1978), *rev'd on other grounds,* 650 F.2d 1365 (5th Cir.1981); *United States v. Torbert,* 496 F.2d 154, 157–58 (9th Cir.1974); *Reeves v. International Telephone and Telegraph Corp.,* 616 F.2d 1342 (5th Cir.1980); *Government of Virgin Islands v. Roberts,* 84 F.R.D. 111 (D.St.Croix 1979).

Plaintiff also vigorously asserts that the violations of FRE Rule 615 at bar are particularly reprehensible as they represent the obvious culmination of defendant's repeated efforts to vitiate the desired effect of the court's sequestration order. As a threshold matter reflecting such efforts, plaintiff points to the strenuous objections of the defendant to the court even invoking the rule at the beginning of the trial.[23] Then, after the rule had been invoked, the record reflects a plan by defendant whereby it intended to revolve its choice for party representative (*i.e.,* the individual excepted from Rule 615 and allowed to remain in the courtroom and hear all testimony) depending on which of plaintiff's witnesses was testifying.[24] The court cautioned defendant, at that time, that it must act so as not to permit frustration of the purpose of the rule. Lastly, following the resolution of the party representative question, defendant sought to limit the application of the rule only to witnesses testifying for its case-in-chief, *i.e.,* defendant argued that a witness to be called solely on rebuttal could remain in the courtroom throughout the entire trial.[25] Upon the further strenuous objection of the plaintiff, the court again clarified its order that the rule applied to *any* witness until after that witness had *finished* testifying—including those called solely for purposes of rebuttal.[26]

Following the plaintiff's claims on August 25, 1986, of substantial violation of the court's sequestration order, as delineated *supra,* defendant requested an opportunity to research the issue before examining Mr. Nettles and stating its position on the record.[27] The court then promptly recessed to accommodate the request of the defendant.[28] Following that recess, the court encouraged defendant to take all the time necessary to voir dire Mr. Nettles to establish any additional facts it desired to support its position, *i.e.,* that there was no violation of Rule 615.[29] Following said invitation, defendant's counsel engaged in an

---

**22.** "Rule 615. Exclusion of Witnesses. At the request of a party the court *shall* order witnesses excluded so that they cannot *hear the testimony* of other witnesses...." (emphasis added).

**23.** Transcript of Proceedings, August 7, 1986, at 27–32.

**24.** *Id.* at 32–34.

**25.** *Id.* at 35–36.

**26.** *Id.* at 36–37.

**27.** Transcript of Proceedings, August 25, 1986, at 40.

**28.** *Id.* at 42.

**29.** *Id.* at 36, 43–50.

exceedingly brief voir dire of Mr. Nettles and then waived its right to further examination. At that point, defendant's counsel conceded that its actions concerning Mr. Nettles "may have been a violation [of Rule 615] or actually an oversight of the court's order," premised on an erroneous interpretation of the scope of the court's sequestration order.[30] Despite any apparent violation, however, defendant insisted that whatever Mr. Nettles overheard, it did not affect his testimony in any way.[31] As a result, therefore, defendant concludes that any error regarding its interpretation of Rule 615 was harmless and therefore not prejudicial to plaintiff.

The court then ordered the parties to brief the issue and file memoranda of law on plaintiff's motion the following morning, August 26, 1986.[32] Plaintiff's memorandum tracked essentially those points expressed *supra*. Defendant's memorandum, however, was a complete about face relative to the position it had stated on the record one day earlier. Through clarification by oral argument held on Tuesday, August 26, 1986, defendant sought to withdraw its previous concession of any possible violation of Rule 615. As argued in its memorandum, defendant now believes its conference room briefing sessions were entirely within the scope of FRE Rule 615, and the general sequestration order of the court made pursuant thereto. In substance, defendant now argues that the scope of Rule 615 has never been extended to prevent prospective *defense* witnesses from being told, out of court, of the in-court testimony of witnesses for the *plaintiff*. The only prohibition is on having prospective defense witnesses actually sit in

the courtroom and *hear first hand* the testimony of its own or plaintiff's witnesses. Following oral argument on August 26, 1986, the court responded by advising the parties that it was taking its ruling on plaintiff's motion under advisement and would not rule definitively on the Rule 615 alleged violations until after the end of the trial.[33]

Previously, on August 7, 1986, the first day of the trial, after the parties stated their respective positions regarding the imposition of Rule 615, the court stated on the record that "[it] can well perceive that this is going to be a warmly contested case, to be charitable." [34] In response to that observation, counsel for the plaintiff opined, "[t]hat's very perceptive, your Honor." [35] Nothing occurred over the ensuing 25 trial days that belied the court's prognosis and, in fact, on the next to the last trial day, *i.e.*, September 10, 1986, the expected did in fact occur. On said day, during the plaintiff's rebuttal case, and while defendant's counsel was cross-examining plaintiff's rebuttal witness, another species of an alleged Rule 615 violation occurred, this time by the plaintiff. In clear contrast to conduct which plaintiff avers manifests defendant's systematic approach to violating Rule 615, defendant cites to two isolated events involving plaintiff's expert witness, Dr. Kondner, as being equally reprehensible. First, on cross-examination by defendant's counsel, Dr. Kondner indicated that he had had a telephone conversation with one Mr. Cunningham on August 25, 1986. As it turns out, Mr. Cunningham was identified in plaintiff's *pretrial statement* as a prospective witness for plain-

---

30. *Id.* at 48.

31. *Id.* at 49.

32. *Id.* at 55.

33. The court was guided in this view by the realization that the better solution would be to allow all testimony in evidence, proffered through Messrs. Nettles and Tarkoy, and grant plaintiff's motion to strike at the end of the trial if the court's ruling is favorable to plaintiff. In the event of any appeal, this approach would, of course, permit the CAFC. to review such evidence stricken and, if it determined that the granting of the motion to strike was in error, the evidence would be in the record and it would not be necessary to hold a subsequent proceeding to permit defendant to adduce such evidence.

34. Transcript of Proceedings, August 7, 1986, at 30.

35. *Id.*

tiff's *case-in-chief*, but was never called to the stand to testify. (Plaintiff rested its case on August 21, 1986.) In his August 25, 1986 telephone conversation with Mr. Cunningham, Dr. Kondner testified that no "testimony" was discussed, but rather, "I told him that I was looking to check information as to whether in fact any gravel had been mined from this particular area [*i.e.*, disposal area AL 11/12] and if so ... what and how much."[36] Mr. Cunningham apparently supplied the information requested.

For purposes of asserting a violation of FRE Rule 615, defendant claims that this telephone conversation, contrary to Dr. Kondner's testimony, may not have occurred on August 25, 1986, but rather occurred before plaintiff rested its case on August 21, 1986. Had the conversation occurred before plaintiff rested its case-in-chief, defendant argues that because the opportunity to call Mr. Cunningham as a plaintiff witness would have still existed, regardless of whether Cunningham was actually called, Rule 615 would still have been violated. Alternatively, however, defendant concedes that "[t]o the extent that the Court believes Mr. Kondner's testimony that his discussion with plaintiff's other prospective witness, Mr. Cunningham, occurred *after* plaintiff's case-in-chief was presented, ... there is no additional violation of the Court's Rule 615 order."[37]

Plaintiff replies with three arguments to the foregoing alleging that the conversation between Dr. Kondner and Mr. Cunningham in no way violated the court's FRE Rule 615 order. First, plaintiff argues that since it never intended to call Mr. Cunningham, nor even ever asked him to appear as a witness at trial, "at the time the Court invoked Rule 615, Mr. Cunningham did not have the status of a 'Plaintiff witness.' "[38] Second, Dr. Kondner's testimony and notes clearly and irrefutably establishes that the telephone conversation in issue took place on August 25, 1986, four days *after* plaintiff rested its case, at which time Mr. Cunningham *could* no longer have been a "plaintiff witness."[39] Third, the evidence is clear that Dr. Kondner did not discuss his testimony with Mr. Cunningham, nor *could* Mr. Cunningham have discussed his testimony[40] with Dr. Kondner, inasmuch as Mr. Cunningham never gave any testimony in the first place. As a result, plaintiff argues, under no scenario did the conversation between Dr. Kondner and Mr. Cunningham violate the court's Rule 615 order.

Next, there is the matter of defendant's trial Exhibit 51 (for identification), which was made available to Dr. Kondner for his review prior to the time it was admitted into evidence at trial, but apparently *after* Dr. Kondner testified on the plaintiff's case-in-chief. Thus, any possible Rule 615 violation, based on Dr. Kondner's review of this exhibit, could only arise on Dr. Kondner's testimony on plaintiff's case-in-rebuttal inasmuch as it was received *after* he testified in plaintiff's case-in-chief. Defendant, however, interprets Dr. Kondner's testimony to be that he reviewed defendant's Exhibit 51 *prior* to trial, thus tainting his entire testimony given in the case. In either case, according to defendant, by providing Dr. Kondner with a trial exhibit, plaintiff violated both the "letter and spir-

---

**36.** Transcript of Proceedings, September 10, 1986, at 56.

**37.** Defendant's Memorandum, September 15, 1986, at 5.

**38.** Plaintiff's Memorandum, September 15, 1986, at 5.

**39.** In its pretrial submission filed on January 16, 1986, Robert Cunningham was listed as a

" ... witness the Plaintiff may call at trial for its case-in-chief."

**40.** "Testimony" is defined in *Black's Law Dictionary*, Fifth Edition, to mean—"Evidence given by a competent witness under oath or affirmation; as distinguished from evidence derived from writings and other sources. Testimony is [a] particular kind of evidence that comes to tribunal through live witnesses speaking under

it" of the court's Rule 615 order.[41] This is so, claims defendant, because "there is no real difference between providing a transcript or discussing a witness' testimony on the one hand and providing a trial exhibit reflecting trial testimony to a prospective rebuttal witness on the other." [42]

Plaintiff responds to defendant's assertions relative to defendant's Exhibit 51 by arguing that "[w]hile Rule 615 precludes the discussion of *testimony* by and among witnesses, an exhibit is *not* testimony." [43] Providing exhibits, plaintiff explains, would only be improper "if Plaintiff's witness were further informed as to the author of the Defendant's exhibit and the testimony given by that author at trial regarding the exhibits." [44] According to Dr. Kondner's testimony, plaintiff contends, nothing more than providing a copy of the exhibit itself was done. In addition, plaintiff argues that even assuming that the act of providing trial exhibits to a witness prior to testifying constitutes a violation of Rule 615, in this case there could still be no violation on these facts inasmuch as defendant's Exhibit 51 for identification was *not* even in evidence at the time it was reviewed by Dr. Kondner.

Based on its arguments as stated, *supra,* defendant has moved to strike *only* that part of Dr. Kondner's testimony relating to the evidence that Dr. Kondner actually "obtained as a result of the Rule 615 violations." [45] This would include "any testimony given by Dr. Kondner relating to the manner in which percentages of gravel and soils materials can be converted from weight to volume expressions and to the mining operations in disposal area 11/12...." [46] As with the other pending motions, the court advised the parties that

it would take defendant's motion to strike under advisement and rule at the conclusion of the trial.

We now proceed with a discussion as to the legal sufficiency of each motion.

### III. *Discussion*

#### A. *Plaintiff's Motion In Limine*

As has been stated on a number of occasions by judges of this court, the purpose of a motion *in limine* is:

> ... to prevent a party before trial from encumbering a record with irrelevant, immaterial or cumulative matters. Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.

*Baskett,* 2 Cl.Ct. 356, 367–68 (1983), *aff'd,* 790 F.2d 93 (Fed.Cir.1986). Pursuant to the framework established by RUSCC 16, a motion *in limine* is a remedy designed to "increas[e] trial efficiency and promot[e] improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial." *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 505 F.Supp. 1125, 1140 (E.D.Pa.1980), and cases cited therein.[47] *See also White Mountain Apache Tribe of Arizona v. United States,* 10 Cl.Ct. 115 (1986); *International Graphics, Division of Moore Business Forms, Inc. v. United States,* 5 Cl.Ct. 100, 104 (1984); *Baskett,* 2 Cl.Ct. at 367–68. With these considerations foremost in our mind, we proceed with our analysis of the operative facts and circumstances underlying plaintiff's motion *in limine.*

---

oath or affirmation in presence of tribunal ... judicial."

**41.** Defendant's Memorandum, September 15, 1986, at 2.

**42.** *Id.* at 3.

**43.** Plaintiff's Memorandum, September 15, 1986, at 6.

**44.** *Id.*

**45.** Defendant's Memorandum, September 15, 1986, at 1.

**46.** *Id.*

**47.** These cases interpret the relevant provisions of the FRCP upon which the rules of this court have been expressly based, with minor variation.

The definitive question relative to the propriety of granting plaintiff's motion *in limine* is whether on these facts defendant is conclusively bound, as a matter of law, by its *voluntary admission* of timely notice as contained in its answer. If so, pursuant to Federal Rules of Evidence (FRE) Rule 402, it would now be irrelevant and immaterial to consider evidence on this matter in resolving the question of whether timely notice was given by plaintiff of the differing site condition as required by contract provisions.[48] The law on this subject, we believe, is clear, and reflects in our judgment ample authority for the granting of plaintiff's motion herein.

In this connection, it has long been held that—"[t]hat which a defendant admits *in his answer* is binding upon him until he withdraws the admission by a proper amended or supplemental pleading." (emphasis added). *Freedom National Bank v. Northern Illinois Corp.*, 202 F.2d 601, 605 (7th Cir.1953); *State Farm Mutual Automobile Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir.1968); *Best Canvas Prod. & Supplies v. Ploof Truck Lines*, 713 F.2d 618, 621 (11th Cir.1983). The binding effect of such admissions, by stipulation or in the pleadings, was aptly stated long ago by the Fifth Circuit in *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir.1941), wherein it held that:

> [J]udicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.

*Id.* at 106 (emphasis added); *see also Best Canvas*, 713 F.2d at 621. Yet, on the other hand, courts have occasionally relieved a party of the adverse effect of such an admission where it has amply demonstrated the existence of what have been termed "exceptional circumstances." *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24 (4th Cir.1963), *cert. denied*, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964). Our Rule 16 similarly contains language

suggesting the need to mitigate the harshness of any pretrial finding in order to prevent "manifest injustice." *See* RUSCC 16; *Romero Reyes v. Marine Enterprises, Inc.*, 494 F.2d 866, 868 (1st Cir.1974).

Exploring the operative facts here, however, we find not one scintilla of evidence demonstrating the existence of "exceptional circumstances," *supra*, but rather, it is patently clear that defendant's admissions of timely notice in its answer are of such a nature that they must unquestionably be construed as binding on it under the great weight of authority cited above. Without qualification, defendant's answer (March 20, 1985) admits the assertion of timely notice contained in paragraphs 15 and 19 of plaintiff's complaint. Thereafter, and prior to trial, defendant at no time attempted to withdraw that admission by a properly focused amended or supplemental pleading. While defendant's *pretrial* submission filed on February 25, 1986, attempts for the first time to assert *untimely* notice, a pretrial submission is *not* a pleading, nor can it, *ipso facto*, act as an amendment to a previously filed unambiguous answer. To analogize to the rule outlined by this court in *Schultz v. United States*, 5 Cl.Ct. 412 (1984), "[w]hen [defendant] presented statements from his pretrial submission ... [*defendant*] clearly presented ... matters outside the pleadings...." *Id.* at 416 (emphasis added).

In addition, we cannot overlook the impact of the express provision of RUSCC 8 on the binding nature of defendant's failure to deny plaintiff's averment of timely notice. RUSCC 8(b) and (d) provide, in relevant part:

> (b) ... *A party* shall state in short and plain terms his defenses to each claim asserted and *shall admit or deny the averments upon which the adverse party relies.*

> (d) ... *Averments in a pleading to which a responsive pleading is required,* other than those as to the

---

**48.** See note 3, *supra*.

amount of damage, *are admitted when not denied in the responsive pleading.* (emphasis added). In connection with RUSCC 7(a), the averment in issue, *i.e.,* timely notice, was undoubtedly contained in a pleading—the complaint—to which a responsive pleading—the answer—was required. Not only did defendant fail to *deny* plaintiff's averment of timely notice contained in paragraphs 15 and 19 of plaintiff's complaint, it replied thereto with the assertion "Admits." Because averments in a complaint to which responsive pleadings are required are deemed *admitted* when *not* denied, *a fortiori,* defendant's voluntary admissions here are deemed just that—a concession to plaintiff's previous averments of "timely notice."

While the court is not unmindful of the apparent harshness which can often flow from the binding nature of such admissions, the importance of giving judicial admissions maximum effect is bottomed on a sound practical rule. One significant benefit of such is that a plaintiff, in preparing its case, as here, can take the defendant's answer at face value. The need to second guess the wisdom of a possibly inadvertent statement is removed. In addition, RUSCC 8 aids in promoting orderly case management. For example, the "admit or deny" provision of RUSCC 8(b) helps unmask frivolous litigation, and forces a recognition of relevant factual and legal issues early on. Similarly, the conclusiveness of the "failure to deny" provision of RUSCC 8(d) works to further define issues by focusing the parties on the precise contention of the opponent. In most cases, the result is an avoidance of lengthy and perhaps even wasteful discovery.

Defendant cites to the case of *McGee v. O & M Boat Co.,* 412 F.2d 75 (5th Cir.1969), for the proposition that "a trial judge 'may, in a proper exercise of discretion, relieve a party of the adverse consequences of a judicial admission.' "[49] While such may be true, we note, as above, that that discretion

is properly invoked only upon a showing of "exceptional circumstances." *See New Amsterdam Casualty, supra.* For such exceptional circumstances to exist, the commentators tell us that defendant's burden is to establish that it was laboring under a mistake of fact when the admission was made. *See* 9 Wigmore, Evidence § 2588 *et seq.* (3d ed. & Supp.1980). To this we add: a mistake through no fault of its own, or alternatively, through *excusable* error. Defendant attempts no such affirmative showing here, but rather simply argues that because "defendant's answer admitting this legal conclusion (timely notice) is factually in error ... [it] should not be deemed binding upon defendant."[50] Defendant's assertion not only misses the mark, but rather we believe it indeed begs the question.

Lastly, we note that while not a required showing on behalf of plaintiff, it is clear that plaintiff will suffer substantial prejudice should such long-standing admission be permitted to be withdrawn. Defendant had the full period of discovery to amend its answer, and did not. As a consequence, plaintiff proceeded through discovery without addressing the timely notice issue for obvious reasons, *i.e.,* the defendant admitted the ultimate fact. To now require evidence from plaintiff on this issue, after plaintiff justifiably relied on the defendant's judicial admission(s) in proceeding through discovery would, in our judgment, be most unfair and would have required, by necessity, the granting of a continuance of this trial for further discovery by the plaintiff. Such a delay would prove to be not only disruptive but clearly costly to plaintiff not only in *time* in seeking redress, but monetarily through duplicative legal fees required to cover a period of discovery which could have obtained *simultaneously* with the earlier discovery phase had defendant sought then what would most likely have been an amendment to its answer.[51]

**49.** Defendant's Opposition to Plaintiff's Motion *In Limine,* August 12, 1986, at 2.

**50.** *Id.* at 3.

**51.** Defendant's assertion that plaintiff's motion *in limine* is itself untimely is thoroughly without merit as plaintiff points out with appropriate

## B. *Rule 615 Violations*

### 1. *Introduction*

The question relative to plaintiff's motion to disqualify two of defendant's witnesses and to strike their testimony and exhibits, and the defendant's motion to strike certain testimony of a plaintiff's witness, is one essentially directed at framing the precise scope of this court's general sequestration order made the first day of trial on August 7, 1986, pursuant to FRE Rule 615.[52] In the context of the parties' respective motions, several specific questions arise relative thereto. Concerning the plaintiff's motion to disqualify defendant's witnesses Mr. Nettles and Peter Tarkoy, and to strike their testimony and exhibits, the issue is the extent to which the court's general sequestration order prohibited not only witnesses on the *same side* from hearing, overhearing, or discussing their respective "testimony" among themselves, as defendant contends, but whether that order also prohibited those same witnesses (*i.e.*, defendant's sequestered witnesses who had not testified) from hearing, overhearing, discussing, or reading the testimony of witnesses for the *opposing side* (*i.e.*, the plaintiff's), as plaintiff contends.

On the other hand, relative to the defendant's motion to strike, the question is twofold. First, at issue is the extent to which the court's general sequestration order prohibited any *prospective* witness from being provided with a copy of one of the opposing side's trial exhibits, once that exhibit had been marked for identification during trial, as defendant contends, or whether there was no prohibition on a *prospective* witness being provided a copy of one of the opposing side's trial exhibits prior to testifying, as plaintiff contends. Second, defendant's motion also raises the question— whether a prospective witness identified in

a pretrial submission as a witness in a party's case-in-chief but never called on the party's case-in-chief, remains a witness under the authority of the court's sequestration order during the party's case-in-rebuttal. Defendant argues in the affirmative; plaintiff argues in the negative. We now seek to resolve each of the foregoing points raised in the parties' motions.

### 2. *Plaintiff's Motion To Disqualify Certain Witnesses of Defendant*

To our knowledge, the precise question raised by this motion, as delineated above (whether a general sequestration order[53] applies to prohibit prospective witnesses from hearing, reading, and being advised of the testimony of *all* witnesses testifying *before* them—both opposing and friendly), is one of first impression in this court. Fortunately, however, we are able to be guided by ample precedent from the other judicial circuits, as well as distinguished commentators, all of whom we deem to be persuasive. There being no discernible conflict among the circuits on this issue, we do not hesitate to adopt their reasoning, where appropriate, as sufficiently persuasive for shaping the precedent of this court.

■ The landmark case cited to in this area is *Holder v. United States*, 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010 (1893), where the Supreme Court held that:

> If a witness disobeys the order of withdrawal, ... he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground, merely, *although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court.*

(emphasis added). As of this opinion, defendant has, for reasons best known only to itself, failed to so move.

---

reference to this court's pretrial conference transcript at p. 40.

In *Romero Reyes v. Marine Enterprises Inc.*, 494 F.2d at 868, the court there stated, quoting *Freedom National Bank*, 202 F.2d at 605: "That which a defendant admits in his answer is binding upon him *until he withdraws the admission by a proper amended or supplemental pleading.*"

**52.** Transcript of Proceedings, August 7, 1986, at 27–37.

**53.** *Id.*

(emphasis added). Said pronouncement raises, therefore, the question as to what conduct may be reasonably construed to fall within the ambit of the phrase "particular circumstances" in which case disqualification would not be deemed to constitute an abuse of discretion. In *Holder, supra,* the Supreme Court was silent as to the "particular circumstances" under which violating witnesses could properly be disqualified. In 1962 Judge Swygert wrote, in *United States v. Schaefer,* 299 F.2d 625, 631 (7th Cir.1962), a case reversing the trial court's exclusion of testimony of witnesses remaining in the courtroom without the knowledge and/or consent of defendant or defendant's counsel, that:

> we interpret *Holder* to mean the court may not disqualify the witness merely because he disobeys the rule but that this alternative is available if particular circumstances are shown. From the better reasoned ... decisions we interpret these particular circumstances to mean some indication the witness was in court [or otherwise in violation] with "the consent, connivance, procurement or knowledge of the appellant or his counsel." [citations omitted] Sequestration of witnesses is a great aid in eliciting the truth, but disqualification of the offending witness absent particular circumstances is too harsh a penalty on the innocent litigant....

*Id.* at 631. We thoroughly embrace the holding of *Holder,* and the insight added to that case by Judge Swygert in *Schaefer.* We bear these considerations in mind as we discuss *infra* our construction of Rule 615, and our reasons for granting the plaintiff's motion to disqualify witnesses.

Turning to the origins of Rule 615 itself, we find Wigmore to be quite on point when he explains that historically, "[t]he process of sequestration [has] consist[ed] merely in preventing one prospective witness from being taught by hearing another's testimony." 6 Wigmore, Evidence § 1838 (Chadbourn rev. 1976). Importantly, we note that Wigmore makes no distinction as to whether the "taught" prospective witness is one friendly or adverse to the other witness whose testimony is ventilated. *Id.* For example,

> (1) If the hearing of an *opposing witness* were permitted, the listening witness could thus ascertain the precise points of difference between their testimonies, and could shape his own testimony to better advantage for his cause. The process of separation, then, is here purely preventive; i.e., it is designed, like the rule against leading questions, to deprive the witness of suggestions as to the false shaping of his testimony.

> (2) But the separation [*i.e.,* sequestration] of *witnesses on the same side* may do something more than this. It is equally preventive, in that it deprives the later witness of the opportunity of shaping his testimony to correspond with that of the earlier one. But it is, additionally, detective in its effect; i.e., it exposes their difference of statement on points on which, had they truly spoken, they must have made identical statements. This variance of statements is the significant achievement of the witnesses' separation, and seems to rest for its probative cogency on two salient circumstances, namely, (a) that the witnesses speak upon the same side, and (b) that the subject of their statements is the details of a single occurrence.

*Id.*

These teachings by Wigmore, which are cited to and adopted by the FRE Advisory Committee, we believe, reflect the clear intendment of FRE Rule 615 where that rule states:

> At the request of a party the court shall order *witnesses excluded so that they cannot hear the testimony of other witnesses....*

FRE Rule 615 (emphasis added). The key word "other," given the foregoing, must include *both* opposing witnesses, as well as those on the same side. This is particularly true whereas here there is nothing in Rule 615 to indicate a limitation on its application to all witnesses, except, of course, as provided in the last sentence

therein which is not an issue here. By the same token, Wigmore also makes absolutely clear that the rule, when invoked, applies equally to prevent the "hearing" of testimony not only *directly* while it is *being* given, but *indirectly* by preventing a prospective witness from consulting with a witness who has left the stand. To achieve these ends, Wigmore explains that the sequestration process involves three parts:

> ... (a) preventing the prospective witnesses from consulting each other; (b) preventing them from *hearing* a testifying witness; (c) preventing them from consulting a witness who has left the stand; the last including consultation between witnesses who have left the stand, since they may still be prospective witnesses.

*Id.* § 1840 (footnotes omitted; emphasis added). Similar to our reasoning stated *supra,* we believe the word "hearing" in Rule 615 was intended by the FRE drafters to include the precise three-step process outlined by Wigmore.

Both long-standing interpretations by Wigmore cited *supra* find sound support in the case law of various judicial circuits and districts. *United States v. Leggett,* 326 F.2d 613 (4th Cir.), *cert. denied,* 377 U.S. 955, 84 S.Ct. 1633, 12 L.Ed.2d 499 (1964); *Taylor v. United States,* 388 F.2d 786 (9th Cir.1967); *United States v. Torbert,* 496 F.2d 154, 157–58 (9th Cir.1974); *Reeves v. International Telephone and Telegraph Corp.,* 616 F.2d 1342 (5th Cir.1980); *Miller v. Universal City Studios, Inc.,* 460 F.Supp. 984 (S.D.Fla.1978), *rev'd on other grounds,* 650 F.2d 1365 (5th Cir.1981); *Government of Virgin Islands v. Roberts,* 84 F.R.D. 111 (D.St.Croix 1979). We find these points born out in practice in several cases whose facts shed considerable light on those underlying the plaintiff's motion here.

First, relative to plaintiff's motion to disqualify Dr. Peter Tarkoy, and to strike his testimony and the exhibits offered through him,[54] for having—(i) been present in various group briefing sessions held by defendant's counsel during which the record testimony of several plaintiff's witnesses, including but not limited to Messrs. McPhillips, Rice, Kondner, and Turner, was openly discussed, and (ii) received from counsel for the defendant a copy of the transcript of plaintiff's expert witness' testimony (Dr. Turner)—there is the case of *Miller v. Universal City Studios, supra,* whose facts are essentially identical to those in issue here. In *Miller,* the district judge refused to allow defendant's expert witness, a Professor Sullivan, to testify as an appropriate sanction for the witness' violation of the court's general Rule 615 sequestration order when he received transcribed portions of a prior witness' testimony. As summarized in the district court opinion:

> [t]he Rule was violated by Professor Sullivan with the *intentional cooperation of defendants' counsel in that defendants' counsel provided Professor Sullivan with transcribed portions of the testimony of Gene Miller* (the plaintiff)....

*Miller,* 460 F.Supp. at 986 n. 1 (emphasis added). As is obvious from the passage quoted *supra,* it takes little extrapolation to line up the facts in *Miller* along side those developed by the actions of defendant and its counsel here. Like *Miller,* defendant's expert, Peter Tarkoy, while under the authority of a general sequestration order, received and reviewed a transcribed portion of the testimony of one of plaintiff's witnesses, Dr. Turner. Importantly, and again analogous to the facts in *Miller,* the transcript of Dr. Turner's testimony was provided to the offending witness *directly* by defendant's counsel, who has admitted being the *primary* force in

---

**54.** The alleged Rule 615 violation by Dr. Tarkoy arose prior to the time he testified as a witness, thus plaintiff's motion was to disqualify him as a witness. The court advised the parties that Dr. Tarkoy would be permitted to testify, the court would rule on the motion at the end of the case, and would strike Dr. Tarkoy's testimony if a Rule 615 violation was found and plaintiff prevailed on the motion.

causing the witness' violation of the court's sequestration order. On these facts alone, the offending witness in *Miller* was disqualified, and that disqualification was expressly found not to be error by the Fifth Circuit at 650 F.2d at 1372–74. We find the result reached in the *Miller* case highly persuasive relative to our decision to disqualify Peter Tarkoy based on an identical violation of this court's general sequestration order. We also find the following rationale for that holding appropriate to this court's views:

> The purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion. [Citations omitted.] *The opportunity to shape testimony is as great with a witness who reads trial testimony as with one who hears the testimony in open court.* The harm may be even more pronounced with a witness who reads trial transcript than with one who *hears* the testimony in open court, because the former need not rely on his memory of the testimony but can thoroughly review and study the transcript in formulating his own testimony.

*Miller,* 650 F.2d at 1373 (emphasis added). In fact, we view Dr. Tarkoy's violation far more egregious, given the foregoing, than that which occurred in *Miller, supra.*

Second, in addition to the above, the alleged violations of Rule 615 by the defendant also include defendant's witnesses (Nettles and Tarkoy) overhearing and/or discussing the testimony of plaintiff's witnesses as parroted by defendant's two counsel, defendant's party representative Dr. Lang, and an independent expert hired by the defendant, Mr. Frazier. This added dimension regarding Dr. Tarkoy's conduct makes it substantially more egregious than that which obtained in the *Miller* case, *supra.* As described *supra,* Messrs. Nettles and Tarkoy, both witnesses in the defendant's case-in-chief, regularly participated in after-court briefing sessions in their hotel conference room where the testimony of the plaintiff's witnesses was freely and openly relayed. The references

in the transcript evidencing the participation of both Nettles and Tarkoy are extensive. The pattern of participating and/or overhearing discussions is well established, covering the testimony of almost every one of plaintiff's witnesses, and is clear beyond doubt, if not irrefutable.

As the case law discussed *infra* establishes, based on even lesser violations of a general sequestration order than those described *supra,* disqualification of an offending witnesses is frequently the appropriate sanction. On this authority, the gross violations of Rule 615 in the case at bar argue *a fortiori* for a disqualification of Messrs. Nettles and Tarkoy. In *United States v. Torbert, supra,* for example, a witness who had already testified was found to have related the substance of his testimony to an individual who later testified. When the nature of the two witnesses' conversation was discovered, the court disqualified the witness who had been told of the previous witness' testimony and excluded that later witness' testimony from the record. *Torbert,* 496 F.2d at 157. Like in *Torbert,* prospective witnesses in the case at bar, *i.e.,* Nettles and Tarkoy, were told, out of court, of testimony previously given in court by various plaintiff's witnesses. Under the authority of *Torbert,* therefore, disqualification of Mr. Nettles and Dr. Tarkoy, based on repeated instances in which far more extensive testimony was revealed, would clearly be appropriate here.

Also instructive as to the appropriate sanction for the flagrant violations of Rule 615 by Nettles and Tarkoy is the case of *Reeves v. International Telephone and Telegraph Corp., supra.* In *Reeves,* counsel for the defendant held a three-hour group meeting to prepare 11 witnesses during which time the court found sufficient discussion of the case had occurred as to constitute a "direct and flagrant violation of a previously entered sequestration and separation order." *Reeves,* 616 F.2d at 1355. The court thereafter prohibited testimony from any of the witnesses who had attended the briefing session. *Id.* We find

no significant difference between the conduct of defendant's counsel in preparing its witnesses in violation of the court's sequestration order in *Reeves,* and the identical actions of defendant's counsel in the case at bar, *supra*—save perhaps for the fact that the frequency of the violations *at bar* is magnified many times over. Disqualification of Nettles and Tarkoy and the striking of their *substantive* testimony, based on the authority of *Reeves,* therefore, would also appear to be soundly supportable.

■ Given the clear teachings of Wigmore and the practice developed by the courts as evidenced by the many cases cited and discussed *supra,* we firmly believe that the court's general sequestration order was sufficiently broad to have prohibited the precise practices undertaken by defendant and cited by plaintiff in its motion to disqualify witnesses. We further find the intricately strategized pattern of Rule 615 violations engaged in by defendant to be totally reprehensible. While we recognize that sound discretion must govern the invocation of such a serious penalty as disqualifying a witness and striking his substantive testimony, *Reeves,* 616 F.2d at 1342; *United States v. Suarez,* 487 F.2d 236, 238 (5th Cir.1973); *United States v. Johnson,* 345 F.2d 457 (6th Cir.1965), we fail to discern from all of defendant's strenuous protestations one argument, based on a rational construction of the case law, which mitigates the extreme nature of these aforementioned violations.

As authority for its central theory that a general sequestration order only prohibits witnesses on the *same* side from discussing their *own* testimony and does *not* preclude them from discussing the testimony of witnesses on the opposing side, defendant relies primarily on three cases: *Geders v. United States,* 425 U.S. 80, 88, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976); *United States v. Scharstein,* 531 F.Supp. 460, 463–64 (E.D.Ky.1982); and *Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1117–19 (5th Cir.), *cert. denied,* 449 U.S.

820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). From its interpretation of these cases, defendant reasons that as a general proposition, "sequestration orders cannot be read or fashioned to interfere with the preparation of a case for trial." [55] Similarly, defendant contends, they cannot be read to *prevent* those activities by counsel which are necessary to make adjustments and revisions to the case as the trial actually proceeds. It is in reliance on this reasoning that defendant apparently postures its contention that a general sequestration order cannot and does not prohibit a party's attorney from discussing with its prospective witnesses the in-court *record testimony* of the opposing side's witnesses.

While we certainly acknowledge the right of counsel to prepare one's case for trial, *i.e.,* case-in-chief and case-in-rebuttal, it is clear beyond cavil that the authorities proffered by the defendant thoroughly fail to establish the defendant's position relative to the precise questions of law at issue herein. To begin with, the court in *Geders* was called on to decide whether a "trial court's order directing petitioner, the defendant in a [criminal] federal prosecution, not to consult his attorney during a regular overnight recess, called while petitioner was on the stand ..., deprived him of the assistance of counsel in violation of the Sixth Amendment." *Geders,* 425 U.S. at 81, 96 S.Ct. at 1332. Clearly, the case at bar does not raise the Sixth Amendment question presented in *Geders.* At no time was the defendant in the case at bar, through its party representative, prohibited from engaging in any discussions, of *any* nature, with defendant's counsel. By its own terms, *Geders,* therefore, has no applicability to the peculiar facts at bar.

We also find unhelpful to defendant's cause its reliance on the case of *United States v. Scharstein,* 531 F.Supp. 460 (E.D. Ky.1982). In *Scharstein,* the question was whether a court must, upon a request from one of the parties, instruct that potential witnesses not only be excluded from the

**55.** Defendant's Memorandum Regarding Sequestration Order, August 26, 1986, at 2–3.

courtroom, but that they also "should not discuss the case with other witnesses, who have already testified or who are going to testify." *Id.* at 462. The court there held that it believed the plain language of the rule did not require as much, and the scope of a court's sequestration order was a matter committed to the discretion of the trial court. Our conclusions are no different. We recognize that the *plain language* of Rule 615 refers only to the "hearing of testimony." But as we previously explained, that phrase has had a long-standing and consistent judicial construction of prohibiting all prospective witnesses from hearing, overhearing, being advised of, reading, and discussing, the previously given in-court testimony of witnesses on their own side as well as the opposite side. It is quite clear from a reading of *Scharstein* that the court recognized this fact, yet was of the opinion that it could also rule, in its discretion, given the facts of that particular case, that it was not bound to follow this practice. Quite simply, we see no inconsistency in embracing the discretionary power arising out of the holding of the *Scharstein* court, while simultaneously invoking that same discretion, given the peculiar and reprehensible facts of this case, to disqualify the substantive testimony of defendant's witnesses Nettles and Tarkoy.

Finally, there is the case of *Potashnick v. Port City Construction Co.*, 609 F.2d 1101 (5th Cir.1980). *Potashnick*, like *Geders*, is a case involving a trial judge's complete prohibition of *all* communication between an attorney and his client. This time the alleged violation occurred during a recess, while the violating witness (the sole shareholder of a closely-held corporation) was still on the stand. The appeals court held that such a prohibition violated that civil litigant's Fifth Amendment due process right to retain counsel. Clearly, there can be no analogy to the facts in the case at bar to those found in such cases as *Geders* and *Potashnick* where the orders involved there prohibited *any* communication between attorney and client. In the case at bar, we are not even talking about a designated party witness, let alone a prohibition of *all* communication between an attorney and his client. What was prohibited in the case at bar is clearly set out in the following court's response to government counsel:

> THE COURT: There is no prohibition by any ruling this Court has made, Mr. Casey, that will preclude either counsel from conferring with [his] witnesses.
>
> The prohibition is divulging to such witnesses who have not testified the testimony of any witness who has previously testified. That's the prohibition.[56]

Based on this important distinction, the relevance of *Potashnick* is as lacking as that of *Geders*.[57]

**56.** Transcript of Proceedings, August 26, 1986, at 52.

**57.** Defendant also cites to a number of other cases, *infra*, for the proposition that on these facts disqualification is neither required nor appropriate. We have carefully reviewed said sequestration cases and are satisfied that none requires a different holding on the facts at bar. For example, *United States v. Schaefer*, 299 F.2d 625 (7th Cir.), *cert. denied*, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962), is a case where defendant's witness remained in the courtroom without the knowledge and/or consent of defendant or defendant's counsel. The Seventh Circuit reversed the trial court's exclusion of that testimony because it was not willful, *i.e.,* a particular circumstance was not shown such as consent or connivance of defendant or counsel. In *United States v. Littwin*, 338 F.2d 141 (6th Cir.1964), several government witnesses, after testifying, returned to the witness room and discussed with prospective witnesses questions asked in court. The Sixth Circuit similarly held that violation of said rule does not automatically bar witnesses' testimony where it was not willful or with knowledge and consent of counsel. *Taylor v. United States*, 388 F.2d 786 (9th Cir.1967), is a case clearly factually distinguishable where the government, in a criminal case, called "Ms. X" to testify and she took the 5th. When Ms. X left the stand, the government requested that she remain in the courtroom and defendant did not object. Defendant, in its case, called Ms. X to testify and the court denied defendant the right to do so. The Ninth Circuit reversed because the government requested Ms. X to remain in the courtroom; moreover, defendant did not then know that she would later waive the 5th. In *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 629 (6th Cir. 1978), the court held that sequestration of a party's expert witness is discretionary. Lastly,

■ What we have held so far applies only to striking the *in-court substantive testimony* of witnesses Mr. Nettles and Dr. Tarkoy. We note here that plaintiff has also moved to strike all of the exhibits received into evidence through foundations laid by these witnesses as well. The court is disinclined to agree with plaintiff that any of the cases cited to and discussed *supra* support such a drastic result. As this court has noted previously, in the words of Wigmore, the purpose of a sequestration order is to "prevent[ ] one prospective witness from being taught by hearing another's *testimony.*" 6 Wigmore § 1838. Inasmuch as defendant's trial exhibits were all prepared and exchanged, pursuant to the court's pretrial order, *prior* to the time the defendant began presenting any testimony, we discern no possible impact that defendant's Rule 615 violations might have had on any facts or representations contained in those exhibits. In fact, plaintiff itself has failed to present any evidence to the contrary. Therefore, to the extent plaintiff seeks an order striking from evidence those exhibits introduced through defendant's witnesses Mr. Nettles and Dr. Tarkoy, that motion is denied.

### 3. *Defendant's Motion To Strike*

As outlined *supra*, there are two issues relative to defendant's motion to strike regarding Dr. Kondner's conduct. The first relates to the extent to which, and at what point, the court's general sequestration order prohibited the review of an adverse party's trial exhibits by a prospective rebuttal witness. The second issue relates to the extent to which an individual identified *prior* to trial as a prospective witness in plaintiff's case-in-chief, but later *abandoned* and *never* contacted by counsel or called by the plaintiff, is still a sequestered witness after plaintiff rests its case-in-chief for purposes of a general sequestration order made at trial. As with the issues

raised by plaintiff's motion *supra*, these precise questions, we believe, reach us at first impression. Unlike the issues ventilated by plaintiff's motion *supra*, however, the sufficiency of the issues presented by defendant's motion to strike is far less substantial and therefore merits little discussion.

■ Addressing the exhibit scenario first, the operative facts are that plaintiff's expert, Dr. Kondner, was provided by plaintiff's counsel with a copy of defendant's Exhibit 51, after it was marked for identification but prior to being received in evidence. This was also *subsequent* to his direct testimony, but *prior* to his rebuttal testimony. Because of the foregoing, defendant moved to strike any testimony by Dr. Kondner relative to the subject matter of this exhibit as a sanction for plaintiff's counsel providing Dr. Kondner with a copy of that exhibit allegedly in violation of the court's general sequestration order. We disagree with defendant's assertion that the act of providing Dr. Kondner with one of defendant's trial exhibits violated the court's Rule 615 general sequestration order.

Having adequately laid out the scope of this court's general sequestration order *supra*, we do not repeat that discussion here. Our focus here is to consider whether that order, by referring to the "testimony" of witnesses, also covered exhibits prepared by them. The issue raised by defendant's motion is not a case of striking testimony *about* exhibits, as those are not the facts here, but rather it is merely one of only supplying Exhibit 51 itself to Dr. Kondner, after the sequestration order was in effect. The evidence is clear that no testimony *about* the exhibit was provided to Dr. Kondner, nor has defendant alleged as much.

in *United States v. Johnston,* 578 F.2d 1352, 1355 (10th Cir.1978), a criminal case, the government called witness A and, before it called witness B to testify, witness A had discussed *his record testimony* with witness B before he (B) took the

stand. The trial court refused to impose any sanction because—(i) there was no evidence of intentional involvement by government counsel and (ii) it observed no apparent contamination of B's testimony. The Tenth Circuit affirmed.

In resolving this issue, we rely primarily on the common legal definition of the word "testimony," from *Black's:*

> *Testimony:* Evidence given by a competent witness under oath or affirmation; *as distinguished from evidence derived from writings, and other sources. Testimony is [the] particular kind of evidence that comes to [the] tribunal through live witnesses speaking under oath or affirmation in [the] presence of [a] tribunal,* judicial or quasi-judicial.

*Black's Law Dictionary* at 1324 (rev. 5th ed. 1979) (emphasis added). As is clear from a reading of Black's, the question of whether trial exhibits are "testimony" is unquestionably resolved in the negative. In particular, testimony is expressly defined as *spoken* evidence in contradistinction from that derived from writings such as exhibits.

On this basis we decline to agree with defendant where it argues: "Plaintiff's counsel is seeking only to split hairs by contending that there is no real difference between providing a transcript or discussing a witness' testimony on the one hand and providing a trial exhibit reflecting trial testimony to a prospective rebuttal witness on the other." [58] The fact is, despite defendant's clever logic, exhibits are not generally equivalent to testimony, except, of course, where a witness' deposition testimony may be received as an exhibit, which is not the case here.

Plaintiff raises two additional relevant arguments against defendant's motion which we believe are also worth noting. First, it contends that whatever the scope of the court's general sequestration order relative to exhibits, it certainly makes no sense to prohibit witnesses from reviewing them unless they are at least already in evidence.[59] That is the rationale why record testimony cannot be repeated to prospective witnesses—for fear that they will tailor their testimony to the evidence *in the record.* Where a document is not in evidence, as was defendant's Exhibit 51 at the time Dr. Kondner reviewed it, the fear of matching evidence in the record does not exist. Second, plaintiff argues that the only reason it provided a copy of defendant's Exhibit 51 to Dr. Kondner *after* the trial began was because defendant failed to provide it to plaintiff at the appointed time *prior* to trial in compliance with the court's pretrial order. At the time plaintiff's counsel forwarded defendant's Exhibit 51 to Dr. Kondner, although it was during trial, it was also the first time defendant had ever furnished plaintiff with a copy of said exhibit. Moreover, had defendant provided plaintiff with a copy of Exhibit 51 prior to trial as the court's pretrial order required, plaintiff could have made said copy available to Dr. Kondner. That circumstance would not have done violence to Rule 615. Consequently, on these facts, we agree with plaintiff where it aptly states that: "Defendant should not now be permitted to fabricate a Rule 615 violation out of its own failure to comply with the Court's Pretrial Order." [60]

We must also deny defendant's motion to strike the testimony of Dr. Kondner notwithstanding Kondner's telephone conversation, *supra,* with Mr. Cunningham. We reach this conclusion on two bases. First, defendant, itself, has conceded no violation of Rule 615 in its Memorandum Regarding Sequestration Violations by Plaintiff's Expert Witness. Defendant's concession is based on an assumption which the court finds is amply supported in the record, *i.e.,* that Dr. Kondner's conversation with Mr. Cunningham took place *after* plaintiff rested its case-in-chief. Therefore, we accept defendant's statement that "[t]o the extent that the Court believes Dr. Kondner's testimony that his discussion with plaintiff's other prospective witness, Mr. Cunningham, occurred after plaintiff's case-in-chief

---

**58.** Defendant's Memorandum, September 15, 1986, at 3.

**59.** Plaintiff's Memorandum, September 15, 1986, at 6.

**60.** *Id.* at 7.

was presented, defendant concedes that there is no additional violation of the Court's Rule 615 order." [61]

■ Finally, the only evidence disclosed on the record regarding the scope of the telephone conversation consisted of Dr. Kondner simply inquiring of Mr. Cunningham as to the quantum of gravel mined from one of the disposal areas; and Mr. Cunningham's response thereto.[62] Dr. Kondner, in response to questions by defendant's counsel, testified that he did not relate his record testimony to Mr. Cunningham.[63] The evidence was not rebutted on this latter point. Against the foregoing background, said telephone conversation could not possibly have violated the court's sequestration order for several reasons—(i) Dr. Kondner did not discuss his record testimony with Mr. Cunningham; and (ii) the latter, Mr. Cunningham, was never called as a witness, thus no comments by him to Dr. Kondner can be construed as discussing his (Mr. Cunningham's) record testimony. In fact, plaintiff's counsel went so far as to represent on the record that at *no* time prior to trial, has any attorney for, or representative of, the plaintiff *ever* contacted Mr. Cunningham about being a witness at *any* time in the proceeding.[64] On these facts, we are forced to conclude that Dr. Kondner's telephone conversation with Mr. Cunningham at no time violated the court's general sequestration order. As such, any motion to strike the testimony of Dr. Kondner based on the conversation of August 25, 1986 with Mr. Cunningham, must be denied on the merits.

IV. *Section 28 U.S.C. § 1292(d)(2) Certification*

■ After considerable reflection, it is this court's firm belief that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion regarding the court's sequestration rulings. Additionally, this court is of the opinion that an immediate appeal from this order may materially advance the ultimate termination of this litigation. While not unmindful that it is the unusual case that warrants such a procedure, for a number of reasons, we believe this to be the classic situation in which the certification process is properly invoked.

First, as a general observation, one needs only to glance at the transcript in this case to appreciate the breadth and scope of the post-trial work which will undoubtedly be necessary for this court and the parties to properly formulate and support the required findings of fact. As a conservative estimate, the transcript in this case, after a five-week trial, will exceed 4,300 pages. We mention this because were it ultimately determined to be error, as a matter of law, for this court to strike the substantive testimony of Mr. Nettles and Dr. Tarkoy, after an extensive effort at factual findings based on a sanitized transcript, on remand the necessary duplication of the entire fact finding process would, at best, be a senseless repetition of effort. Through the certification procedure, such an undesirable result may be obviated.

Second, as is evidenced by the record developed relative to the parties' respective positions on the scope of this court's general sequestration order, we believe this is indeed a situation where there is substantial ground for difference of opinion. As we have stated, our decision taken in this opinion is a resolution of questions of law which, we believe, have reached this court as a matter of first impression. As such, we have no guiding precedent binding on this court to aid us in resolving these issues. Plaintiff and defendant have relied, as has the court, entirely on the opinions of courts from other circuits. While we have been able to discern a reasonable reconciliation of the authorities cited herein, we at

---

**61.** Defendant's Memorandum, September 15, 1986, at 5.

**62.** Transcript of Proceedings, September 10, 1986, at 56–57.

**63.** *Id.* at 54–55.

**64.** *Id.* at 102–03.

the same time recognize that defendant's position warrants immediate consideration by the CAFC. This is particularly so because it is implied, at least from the representations of defendant's counsel, that the type of activity which occurred in this case is believed to be a proper practice by certain persons within the Department of Justice.[65] This court is therefore of the view that the sequestration issues are serious and far reaching issues which argue for a quick and authoritative resolution.

Lastly, we wish to point out that this case is undeniably not an "ordinary case," [66] as that phrase has come to be used in the realm of interlocutory review. The complex and scientific nature of the issues forming the basis of this differing site condition claim have been the subject of the testimony of four expert witnesses. In fact, we believe it a fair assessment to characterize this case as one "belonging" to the experts. By this we mean to say that it is imperative that in resolving what are difficult and sensitive questions of fact, we need to be able to focus as sharply as possible on the merits of the *proper* evidence before us. Collateral questions such as those ventilated by the Rule 615 motions addressed in this opinion, which exacerbate the court's fact finding obligation, must be authoritatively resolved before a final judgment of this court can, with confidence, be rendered.

WHEREFORE, pursuant to 28 U.S.C. § 1292(d)(2) (1982), and upon a finding that "a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal ... [will] advance the ultimate termination of the litigation," we certify for interlocutory review to the United States Court of Appeals for the Federal Circuit those questions of law presented and resolved in section III.B. of this opinion.

## V. *Post-Trial Briefing Order*

The scheduling of post-trial briefing in this case, by necessity, is dependent upon whether plaintiff or defendant applies for interlocutory review of the certified questions in this case, and then whether the Federal Circuit accepts for interlocutory review the application filed. Quite simply, it makes no sense for defendant to draft proposed findings of fact without the testimony of Mr. Nettles and Dr. Tarkoy, if it was error, as a matter of law, for this court to have excluded that testimony. The converse is also true with respect to the plaintiff and the included testimony of Dr. Kondner. With that in mind, we believe the best method of proceeding, at this posture, is for the parties to appear before the court, to discuss post-trial briefing, on Friday, October 10, 1986, at 10:00 a.m.[67] We choose this date as it is one which follows the closing of the period within which either party is free to file an application for interlocutory review. *See* 28 U.S.C. § 1292(d)(2).

## VI. *Conclusion*

Relative to plaintiff's motion *in limine*, it is simply too late for defendant's judicial admissions of timely notice to be withdrawn. Therefore, said motion is hereby GRANTED.

Relative to the motions for sanctions based on the parties respective alleged violations of the court's general sequestration order, plaintiff's motion to disqualify de-

---

**65.** In that connection, counsel for the defendant stated:

I have now ... talked to very experienced trial attorneys at the Justice Department. And I have come to the conclusion that my interpretation of what that sequestration order meant was correct. (Transcript of Proceedings, August 26, 1986, at 15.)

....

Your Honor, our view of what the sequestration order [meant] was confirmed by discussions with numerous very experienced Justice Department attorneys. (Transcript of Proceedings, August 26, 1986, at 18–19.)

**66.** *Brown v. United States,* 3 Cl.Ct. 409, 412 (1983).

**67.** It is expected that by this date the parties will have ordered and received a complete copy of the transcript in this case, so that post-trial briefing can commence immediately.

fendant's witnesses Mr. Nettles and Dr. Tarkoy is hereby GRANTED in part and DENIED in part. Specifically, all *substantive* testimony of these two witnesses is hereby stricken from the record; however, all foundation testimony provided by these witnesses, to facilitate the admissibility of exhibits entered into evidence, shall stand. Defendant's motion to strike the aforementioned testimony of, and exhibits entered through, plaintiff's witness Dr. Kondner is DENIED. Any and all questions of law raised and resolved as a consequence of these two motions are certified for interlocutory review pursuant to 28 U.S.C. § 1292(d)(2).

IT IS SO ORDERED.