**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Norman TORBERT,
Defendant-Appellant.**

**No. 73-2541.**

United States Court of Appeals,
Ninth Circuit.

April 26, 1974.

---

T. Rodger Duncan (argued), Hollywood, Cal., for appellant.

Jan Lawrence Handglik, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

Before KOELSCH and HUFSTED-LER, Circuit Judges, and TURREN-TINE,* District Judge.

KOELSCH, Circuit Judge:

Thomas Norman Torbert appeals from his conviction on four counts of possession, passing, and transferring counterfeit Federal Reserve notes, 18 U.S.C. §§ 472 and 473.

The government's evidence, credited by the jury, established that appellant knowingly passed a counterfeit $100 Federal Reserve note to make a payment to a finance company; and that he knowingly possessed and transferred twenty counterfeit $100 notes to two men, Barbusse and Nosratian. Both men testified against appellant. While there is considerable discrepancy in the testimony of appellant and that of the two accomplices, appellant does not here challenge the sufficiency of the evidence, nor could he successfully do so. Rather, he assigns as error various rulings of the district court. Finding none of the rulings erroneous, we affirm appellant's conviction.

Appellant contends he was denied due process of law by the procedure used to transfer the case from the originally assigned judge to Judge Real, who tried the case. Appellant filed a timely motion to disqualify the original trial judge, accompanied by the required affidavit of prejudice and certificate of counsel. The moving papers assert facts sufficient to require disqualification under 28 U.S.C. § 144, which provides in part:

> "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit . . . such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

Without formally ruling on the motion for disqualification, the challenged judge transferred the case to the calendar of Judge Real. Such reassignment through agreement of the affected judge is allowed by Rule 2 of the Local Rules of the United States District Court for the Central District of California. General Order No. 104(i) of the same court, however, provides that a case returned to the Clerk by reason of disqualification shall be reassigned by the same random procedure used to originally assign the case. Appellant made a motion to Judge Real seeking to have the case reassigned in the random manner provided for by the General Order. The motion was denied, and Judge Real conducted the trial.

■ Appellant here contends that the reassignment of his case by the challenged judge, rather than by the random procedure, violates 28 U.S.C. § 144 and his right to due process. We disagree.

There is certainly no constitutional impediment to the procedure used to transfer the case. We are unwilling to presume, without any factual showing (and none was made here), that a judge to whom a case is thus transferred entertains prejudice against an accused. If the likelihood of prejudice of the second judge is not manifested in his conduct of the trial (and none appears here, then the accused has received from him the fair trial to which due process entitles him. *See* Chessman v. Teets, 239 F.2d 205 (9th Cir. 1956).

■ Reassignment pursuant to Rule 2 is also consistent with the language of the statute. Section 144 does not provide for the method by which cases should be reassigned, stating only that "another judge shall be assigned . . . ." Appellant argues that the reassignment by the challenged judge to another of his own choosing violates the statutory directive that once a sufficient affidavit is filed, the judge "shall proceed no further therein . . . ." We do not so construe the statute. Once an affidavit is filed, the challenged judge, unless the case is to languish on

---

* The Honorable Howard B. Turrentine, United States District Judge for the District of Southern California, sitting by designation.

his calendar in limbo, must invariably "proceed further" to rule on the legal sufficiency of the affidavit and to order the case either reassigned or returned to the clerk.[1]

■ Nor does the spirit of the statute conflict with non-random reassignment. The statute prevents a challenged judge from affecting substantive rights by prohibiting him from proceeding. However, except when the litigant can establish that the judge to whom the case was transferred was at that time also prejudiced in the matter, we do not consider a transfer the type of judicial action which can potentially prejudice appellant's substantive rights and against which the statute is directed. Moreover, the statute itself reconciles the dangers of abuse of successive challenges with the prohylactic need 'for disqualification by limiting a litigant to one affidavit of prejudice in a case—the potential prejudice of subsequent judges is left to be dealt with by the appellate process. Here appellant has received what the statute provides—the right to challenge one judge, and trial before another judge, whose rulings are subject to review. *Cf.*, United States v. Hoffa, 245 F.Supp. 772 (E.D.Tenn., 1965).

■ The failure of the district court to follow the procedure for random assignment[2] outlined in its General Order does not require the reversal of appellant's conviction. The General Order is a housekeeping rule for the internal operation of the district court which has "a large measure of discretion in interpreting and applying" it. Lance, Inc. v. Dewco Services, Inc., 422 F.2d 778, 784 (9th Cir. 1970). It does not give appellant a vested right to any particular procedure, so long as alternatives applied by the court are consistent with § 144 and constitutionally permissible. Having failed to show he was actually prejudiced by the failure to comply with the General Order, appellant is not entitled to reversal on that basis.[3] United States v. Simmons, 476 F.2d 33 (9th Cir. 1973).

Appellant's contention that a witness who could corroborate some of appellant's testimony was erroneously disqualified from testifying is likewise without merit. At the request of the defense, the court ordered all witnesses not to discuss their testimony with other witnesses until all testimony was complete. During the first day of trial, a discrepancy became apparent between the testimony of appellant and the alleged accomplice Nosratian. Appellant testified that Nosratian paid him the counterfeit bills to settle a bet on a pool game at a private club; Nosratian denied that he played pool at the club, and claimed it was closed when appellant alleged the game took place. At the close of proceedings on the first day of trial, appellant's counsel asked him to locate a witness to verify his story.

Appellant went to talk to the club's manager. Rather than simply inquiring into whether the manager knew when the club had been open or whether Nosratian played pool there, appellant recited the substance of his own testimony to the potential witness, who agreed to testify that Nosratian had indeed played pool at the club during the period in question. Appellant's violation of the court's order was revealed by government questioning the next day, and the court disqualified the witness and excluded his testimony.

■ It is well settled that a court, in order to enforce a sequestration or-

---

1. The failure of the district court to rule on the sufficiency of the affidavit of prejudice did not prejudice appellant, as the case was reassigned to a different judge. *Cf.*, Benitez v. Bank of Nova Scotia, 141 F.2d 939 (1st Cir. 1944).

2. The government contends that the General Order was not violated because the original judge did not rule formally on the motion for disqualification. We think that the transfer by Rule 2 was the effective equivalent of a formal disqualification, *see* United States v. Hoffa, 245 F.Supp. 772 (E.D. Tenn.1965), and that at least the spirit, if not the letter, of the General Order was violated.

3. The procedure for reassignment outlined in the General Order is no doubt intended to maintain the appearance of justice and impartiality. And it ought to be followed.

der, may in some circumstances exercise its discretion to disqualify an offending witness. *See* Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); Taylor v. United States, 388 F. 2d 786 (9th Cir. 1967). However, because of the availability of alternative sanctions to enforce the order, and because of the constitutionally based right of the defendant to relevant testimony in his favor, *see* Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1968); Braswell v. Wainright, 463 F.2d 1148 (5th Cir. 1972), it is ordinarily an abuse of discretion to disqualify a witness unless the defendant or his counsel have somehow cooperated in the violation of the order. *E. g., Braswell, supra,* at 1155; *Taylor, supra,* at 788. Here the appellant himself violated the clear order, and we are satisfied that the trial court permissibly enforced the purpose of the order by disqualifying the witness to whom appellant had recited his testimony.

■ Continuing with appellant's contentions, we conclude that the refusal of the district court to grant a continuance on the afternoon before trial was well within its discretion. United States v. Goodman, 457 F.2d 68 (9th Cir. 1972).

■ Likewise, the district court properly allowed the cross-examination of which appellant complains. Appellant's direct testimony put his knowledge of the counterfeit nature of the bills and his intent in issue, and the government's questioning probed the matter. In particular, the questions relating to the unindicted incident in which appellant bought a camera with four $100 counterfeit notes were proper both to explore intent and to lay a foundation for impeachment by appellant's various inconsistent prior statements. United States v. Harding, 432 F.2d 1218, 1220 (9th Cir. 1970).

■ Appellant's remaining contention is also without merit, but requires more than passing attention. Appellant

sought to elicit evidence from several character witnesses. The government objected on the ground that such evidence was inadmissible until the government had first attacked appellant's character. The judge, however, appears to have excluded the evidence, not on the ground urged, but because no adequate foundation was laid for its introduction. We affirm on that basis—none of the witnesses was sufficiently well acquainted with appellant's reputation in the community to express an opinion.

■ The ground urged by the government was erroneous. The law is well settled that an accused may present, initially, evidence of his good character as relevant, substantive evidence bearing on the probability that he did not commit a particular act, or did so without the requisite knowledge or intent. And, conversely, the government may not adduce proof of general bad character until the accused has first put his character in issue. *E. g.,* Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L. Ed. 168 (1948). To the extent that Harris v. United States, 412 F.2d 384, 388 (9th Cir. 1969), is to the contrary, that decision is overruled.[4]

The judgment is affirmed.

---

4. This opinion has been circulated to all of the active judges of the court. No judge

has requested that the case be reheard in banc.