Charles **SINITO** Jr. (83–3791), Thomas J. Sinito (84–3018), Petitioners-Appellants,

v.

**UNITED STATES** of America, Respondent-Appellee.

Nos. 83–3791, 84–3018.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1984.

Decided Oct. 24, 1984.

*tana*, 442 U.S. 510, 515, 522, 99 S.Ct. 2450, 2454, 2458, 61 L.Ed.2d 39 (1979).

Gordon S. Friedman, Cleveland, Ohio, for petitioner-appellant Charles Sinito, Jr.

Bernard A. Berkman, Berkman, Gordon, Murray & Palda, Thomas Longo (argued), Cleveland, Ohio, for petitioner-appellant Thomas J. Sinito.

Leodis C. Mathews, Steven Olah, Strike Force, Stephen Jigger, Cleveland, Ohio, William C. Bryson, Paul Larkin (argued), Washington, D.C., for U.S. in both cases.

J. William Petro, U.S. Atty., Cleveland, Ohio, for U.S. in No. 84–3018.

Before EDWARDS and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge.

This is an appeal by the defendant, Charles Sinito, Jr.,[1] from an order entered by the Honorable John M. Manos of the United States District Court for the Northern District of Ohio denying motions for postjudgment relief. For the reasons stated below, we affirm.

Following a jury trial in the United States District Court for the Nothern District of Ohio, the appellant, Charles Sinito, Jr., was convicted of conspiring to engage in racketeering activity, engaging in racketeering activity, making extortionate extensions of credit, and collecting extensions of credit by extortionate means, in violation of 18 U.S.C. §§ 1962(d), 1962(c), 892(a), and 894(a). He was sentenced to concurrent terms of three years' imprisonment on each count. On appeal, this Court affirmed Sinito's conviction in an unpublished order. *United States v. Sinito*, No. 81–3707 (6th Cir. Jun. 7, 1983) (noted at 714 F.2d 143).

On September 26, 1983, appellant filed what he termed a "Motion to Set Aside Judgment or in the Alternative Motion to Stay Execution of Sentence Indefinitely Pending an Investigation of Allegations Raised Herein."[2] The motion was patterned after a similar motion filed on behalf of two of the defendants in the unrelated case of *United States v. Gallo*, No. CR 82–119 (N.D.Ohio). The motion filed in *Gallo* charged that the prosecutors, in that case, had engaged in a pattern of steering significant criminal cases to judges of their preference by manipulating the court assignment system in the Northern District of Ohio.

In a lengthy opinion, the district court denied the motion for a new trial in the *Gallo* case. *See* Appellee's Brief at App. 1 (reproducing the opinion in *United States v. Gallo*, No. CR 82–119 (N.D.Ohio Oct. 11, 1983)). On October 17, 1983, the court filed an opinion denying relief in the instant case. *See* Appellee's Brief at App. 2 (reproducing the opinion in *United States v. Sinito*, No. CR 81–58 (N.D.Ohio Oct. 17, 1983)).

In its *Gallo* opinion, the district court found, as a factual matter, that the prosecutors had not steered that case to Judge Manos. *Gallo*, slip op. at 9–11. Also, the

---

**1.** On April 16, 1984, defendant, Thomas J. Sinito, the petitioner-appellant in No. 84–3018 filed a motion to consolidate his appeal with No. 83–3791, the appeal of Charles Sinito, Jr., and to adopt Charles Sinito's appellate brief as his own. This Court granted that motion on June 7, 1984. Since the district court's order pertained solely to Charles Sinito, Jr., this opinion has been drafted as if Charles Sinito were the sole appellant. However, given our approval of Thomas Sinito's motion for consolidation and the opportunity afforded his counsel to argue before this Court—Thomas J. Sinito is also bound by our decision affirming the denial of postjudgment relief.

**2.** In the district court, Sinito did not refer to his motion as a motion for a new trial under Federal Rule of Criminal Procedure 33. But because the seven day time limit for motions in arrest of judgment had expired, *see* Fed.R.Crim.P. 34, the district court treated the motion as one for a new trial or for relief under 28 U.S.C. § 2255. In his brief in this Court, Sinito treats his appeal as an appeal from an order denying a motion for a new trial. See Appellant's Brief at 5–6.

court held that even if the prosecutors had steered the case to Judge Manos, it would not afford the defendants a ground for relief, for two reasons: first, because the *Gallo* defendants had not raised the issue in a timely fashion before trial; and second, because defendants are not denied due process simply because they are tried by one judge of a particular court rather than another. *Id.* at 11–22.

In its opinion concerning the present case, the district court set forth its reasons for denying relief. First, the court stated that the very materials which Sinito submitted in support of his motion actually rebutted his claim of intentional steering. The court noted that the materials submitted conclusively demonstrated that Sinito's case "was assigned *by random draw* and could not have been steered to this court by the government." *Sinito*, slip op. at 1 (emphasis in the original). Second, the court ruled, as it had in *Gallo*, that even if the case was erroneously assigned to Judge Manos, Sinito was not denied his right to due process and therefore was not entitled to a new trial. *Sinito*, slip op. at 3–5.

In *Sinito*, the court described the case assignment system used in the Northern District of Ohio. After explaining the operation of the system, the court observed that the *Sinito* case, No. CR 81–58, was assigned by blind draw to Judge Contie and then properly transferred to Judge Manos under the court's internal procedures, known as the "Akron plan." [3] *Id.* at 2. The court noted that Sinito was not claiming that there was any error in the draw which resulted in his case being initially assigned to Judge Contie, or in the process of reassigning his case to Judge Manos under the "Akron plan." Rather, Sinito's complaint was that an error had been made in the assignment of a previous case, No. CR 81–56, and absent that error, Sinito's case would have ended up being assigned to a different judge. *Id.* at 2–3.

In rejecting Sinito's claim, the court pointed out that even if his allegations were true, there was no basis for concluding that the government had played any part in the assignment of the case to Judge Manos. Further, the court noted that the facts alleged by Sinito, at most, amount to a ministerial error on the part of the clerk's office. *Id.* at 1, 3. As the court pointed out, under Sinito's theory the judgment in virtually every criminal case filed in the division over the past two years would have to be set aside. The court explained that this would be the logical result of Sinito's argument, because the alleged error in the assignment of No. CR 81–56 resulted in almost every subsequent case being assigned to a judge other than the one who would have received the case absent the mistake. *Id.* at 5 n. 4.

From our review of this appeal, we conclude that the appellant has not set forth grounds upon which we could reverse the trial court. As the district court noted, there is nothing in the materials submitted by Sinito or by the defendants in the *Gallo* case to suggest that the government had anything to do with the process by which Judge Manos was assigned the *Sinito* case. The *Sinito* case was not sent to Judge Manos as a special assignment or because it was allegedly related to any other case. Rather, as appellant concedes, the *Sinito* case came to Judge Manos as a result of the random draw system. That is, the case was initially assigned to Judge Contie, and the clerk's office then immediately transferred it to Judge Manos under the "Akron plan." *Sinito*, slip op. at 2–3.

In his brief, Sinito asserts that the government was somehow responsible for the assignment of his case to Judge Manos. Appellant's Brief at 2, 3, 5, 7. However, this assertion is not supported by any evidence or factual analysis. Rather, as the district court noted, the very evidence that

---

**3.** Under the "Akron plan," the district court judge sitting in Akron can exchange a non-Akron case initially assigned to him for an Akron case of the same category initially assigned to a judge sitting in Cleveland, thus facilitating the hearing of Akron cases by a judge in Akron and non-Akron cases by a judge sitting in Cleveland.

Sinito submitted to the district court conclusively rebuts his assertion that the prosecutors were responsible for the assignment of his case to Judge Manos.

Sinito relies exclusively on the Declaration of Attorney Alan P. Caplan and its attached exhibits to support his motion for a new trial. *See* Appellant's Brief at 32, 37. The only portion of that material which refers to Sinito's case is located at pages 21–25 of the Declaration. Appellant's Brief at 50–54. A close review of those pages reveals that there is no suggestion of government complicity in the process leading to the assignment of the case to Judge Manos and no basis for the inference that the government was in any way involved in that process.

In its discussion of the *Sinito* case, the Caplan Declaration does not allege any impropriety in the initial assignment of the case to Judge Contie or in the transfer of the case to Judge Manos under the "Akron plan." The sole point made by the Caplan Declaration is that an error was apparently made in the assignment of an earlier case, No. CR 81–56, and that this error threw the assignment sequence off for all subsequent cases, including Sinito's case. Appellant's Brief at 53–54. Thus, according to the Caplan Declaration, but for the error, Sinito's case would ultimately have been assigned to Judge Lambros, not Judge Manos. *Id.*

Even if there was an error made by the clerk's office in the assignment of an earlier case, and even if that error ultimately resulted in Sinito's case being assigned to a different judge, the error does not entitle Sinito to relief. Any time an error is made in the random draw system, it cannot mean that every case assigned after the error will be assigned to the "wrong" judge. Taking appellant's argument to its logical conclusion, almost every judgment entered in any case assigned after the first error ever made in the random draw system would be in peril.

■ The district court correctly noted that a defendant does not have a right to have his case heard by a particular judge.

*See United States v. Braasch,* 505 F.2d 139, 147 (7th Cir.1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975); *United States v. Stone,* 411 F.2d 597, 598 (5th Cir.1969); *see also United States v. Radlick,* 581 F.2d 225, 230 (9th Cir.1978); *Hvass v. Graven,* 257 F.2d 1, 5 (8th Cir.), *cert. denied,* 358 U.S. 835, 79 S.Ct. 58, 3 L.Ed.2d 72 (1958); *United States v. Baker,* 441 F.Supp. 612, 615 (M.D. Tenn.1977). Nor does a defendant have the right to have his judge selected by a random draw. *See United States v. Simmons,* 476 F.2d 33, 35 (9th Cir.1973); *United States v. Keane,* 375 F.Supp. 1201, 1204 (N.D.Ill.1974), *aff'd in pertinent part,* 522 F.2d 534, 557 (7th Cir.1975), *cert. denied,* 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976); *accord United States ex rel. Monty v. McQuillan,* 385 F.Supp. 1308, 1310–11 (E.D.N.Y.1974), *aff'd without published opinion,* 516 F.2d 897 (2d Cir.1975).

■ Even when there is an error in the process by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error unless he can point to some resulting prejudice. *See United States v. DeLuca,* 692 F.2d 1277, 1281 (9th Cir.1982); *United States v. Allen,* 675 F.2d 1373, 1385 (9th Cir.1980), *cert. denied,* 454 U.S. 833, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981); *United States v. Radlick,* 581 F.2d at 230; *United States v. Torbert,* 496 F.2d 154, 157 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974; *United States v. Simmons,* 476 F.2d at 35; *United States v. Dichiarinte,* 385 F.2d 333, 337 (7th Cir.1967), *cert. denied,* 390 U.S. 945, 88 S.Ct. 1029, 19 L.Ed.2d 1133 (1968); *Levine v. United States,* 182 F.2d 556, 559 (8th Cir.1950), *cert. denied,* 340 U.S. 921, 71 S.Ct. 352, 95 L.Ed. 665 (1951).

■ Local rules governing the assignment of cases are designed as internal housekeeping rules to promote the efficient operation of the district courts; they are not meant to confer rights on litigants. *United States v. Torbert,* 496 F.2d at 157;

*United States v. Simmons,* 476 F.2d at 35. As the Eighth Circuit stated in *Levine v. United States,* 182 F.2d at 559:

> [E]ven if control over the assignment of cases were not observed by the court under the rule, the judges have inherent power to administer the business of the courts in an orderly way. Litigants have no vested right in the order in which cases are assigned for trial; and it is not contended that the judge to whom the case was assigned was in any way disqualified.

In this case, Sinito made no claim in the district court that he was prejudiced by the assignment of his case to Judge Manos, and no claim of prejudice is made in his brief in this Court. The fact that this Court affirmed Sinito's conviction on direct appeal suggests that Sinito was not prejudiced by the manner in which the trial was handled. Further, in light of the seriousness of the offenses for which appellant was convicted, we do not read this appeal as contending that the sentence he received was inappropriately harsh.

With respect to Sinito's second issue concerning the denial of a stay of execution of his sentence, we do not read this claim as setting forth any substantially different grounds for reversal of the district court's order than his first issue concerning denial of the motion for new trial. As discussed above, we believe that the district court was correct in denying a new trial. Similarly, we also believe the district court was correct in denying the motion to stay execution of the sentence.

Accordingly, the judgment of the Honorable John M. Manos is affirmed.